IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

LINDA HUFFMAN,

          Plaintiff,

vs.                              **Case No. 09-4138-RDR**

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

          Defendant.

**MEMORANDUM AND ORDER**

On October 25, 2004, plaintiff filed applications for social security disability insurance benefits and supplemental security income benefits. These applications alleged a disability onset date of September 24, 2004. On February 19, 2008, a hearing was conducted upon these applications. The administrative law judge (ALJ) considered the evidence and decided on March 20, 2008 that plaintiff was not qualified to receive benefits on either application. On August 14, 2009, the Appeals Council notified plaintiff that it was denying plaintiff's request to review the ALJ's decision which was then adopted by defendant. This case is now before the court upon plaintiff's motion to review the decision to deny plaintiff's applications for benefits.

I. STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he is "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E). This means proving that the claimant is unable "to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." § 423(d)(1)(A). But, disability benefits can only be awarded to claimants who can show that they were disabled prior to the last insured date. §§ 423(a)(1)(A) & 423(c).

For supplemental security income claims, a claimant becomes eligible in the first month where he is both disabled and has an application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004). "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id., quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court

would have made a different choice if the matter were referred to the court de novo. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II. THE ALJ'S DECISION (Tr. 30-37).

The ALJ set forth the five-step sequential evaluation process for determining eligibility for social security benefits. The ALJ found first that plaintiff met the insured status requirements for benefits. Second, the ALJ found that plaintiff had not engaged in substantial gainful activity since September 24, 2004. Third, the ALJ held that plaintiff had the following severe combination of impairments: disorder of the back, shoulder, hands and knees, as well as diabetes. He found that plaintiff suffered from mild degenerative disc disease, minimal osteoarthritis in her knees, left shoulder surgery for a rotator cuff tear in December 2005, carpal tunnel release on both hands, rheumatoid arthritis in her hands, and diabetic peripheral neuropathy. He determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the social security regulations. The ALJ found that plaintiff had the residual functional capacity (RFC) to lift and carry 10 pounds frequently and 20 pounds occasionally; stand and/or walk for 2

hours in an 8-hour day, and sit for 6 hours in an 8-hour day.[1]  He found that plaintiff needed a sit/stand option every 30 minutes and that plaintiff could bend occasionally, but could not crawl, kneel, crouch or lift from floor level.  He also found that plaintiff could not climb steps repeatedly and could not perform overhead lifting or reaching, pushing or pulling.  According to the ALJ, plaintiff could not use her hands repetitively or with fine dexterity.

The ALJ determined that plaintiff was unable to perform any of her past relevant jobs which were identified as a mental retardation technician and in-home daycare worker.  But the ALJ decided that plaintiff was not eligible for social security benefits because she retained the residual functional capacity to perform jobs that existed in significant numbers in the national economy.  In making this finding, the ALJ relied upon a vocational expert who testified that plaintiff would be able to perform the requirements of a security systems monitor and credit checker.  The ALJ's opinion states:

> The vocational expert testified that approximately 500 security systems monitor positions exist in Kansas and 100,000 exist nationally and 380 credit checker positions

---

[1] The ALJ's decision states that plaintiff can "lift and carry 10 pounds frequently and 10 pounds occasionally." (Tr. 34).  While it is unusual in these cases for the capacity to lift "frequently" and "occasionally" to be the same, the court cannot say for sure that this is a typographical error.  This aspect of plaintiff's RFC does not appear material to the issues raised by the parties.

4

>exist in Kansas and 19,000 exist nationally. The vocational expert's testimony is consistent with the <u>Dictionary of Occupational Titles</u> and the <u>Selected Characteristics of Occupations</u>, pursuant to SSR 00-4p. The undersigned finds that these jobs represent work the [plaintiff] could perform that exists in significant numbers in the regional and national economies.

(Tr. 37).

III. ARGUMENTS & ANALYSIS

Plaintiff argues that this matter should be remanded for further administrative consideration of whether a "significant" number of jobs exist which plaintiff can perform.

The fifth and last step of the sequential evaluation of social security benefit applications is whether the claimant has the RFC to perform other work in the national economy, considering his or her age, education and work experience. <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1142 (10th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4). The Social Security Act provides that a claimant may not receive disability benefits if he can "engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). The Act defines "work which exists in the national economy" as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." <u>Id.</u>

5

Plaintiff contends that the ALJ should have considered multiple factors described in Trimiar v. Sullivan, 966 F.2d 1326, 1330 (10th Cir. 1992) before concluding that a "significant" number of jobs existed which plaintiff could perform. In Trimiar, a vocational expert testified that claimant could perform three kinds of unskilled jobs and that there were 650 to 900 such jobs in the State of Oklahoma. The vocational expert apparently did not give a national figure for the number of jobs. The Tenth Circuit held that before the ALJ could decide whether the number of jobs described by the vocational expert constituted a "significant number" that the ALJ should consider the following factors:

> "A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988) (quoting Hall v Bowen, 837 F.2d 272, 275 (6th Cir. 1988)). "The decision should ultimately be left to the [ALJ's] common sense in weighing the statutory language as applied to a particular claimant's factual situation." Id.

966 F.2d at 1330.

In recent cases, the Tenth Circuit has stated that where a vocational expert has identified a large number of jobs in the national economy and the claimant does not dispute that the number is "significant", the ALJ need not have engaged in the multi-factor analysis. Raymond v. Astrue, 356 Fed.Appx. 173 (10th Cir. 2009) (1.34 million jobs); Botello v. Astrue, 2010 WL 1645976 (10th Cir.

6

2010) (67,250 jobs); Wendelin v. Astrue, 366 Fed.Appx. 899 (10th Cir. 2010) (92,137 jobs). In Stokes v. Astrue, 274 Fed.Appx. 675, 684 (10th Cir. 2008), the Tenth Circuit stated that where a vocational expert testified that there were 11,000 jobs regionally and 152,000 jobs nationally, "we do not believe any reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where [claimant] lives or several regions of the country."

In this case, plaintiff stipulated to the qualifications of the vocational expert. (Tr. 70). The ALJ and the vocational expert obviously considered plaintiff's level of disability and the type and availability of work. Plaintiff indicated in her testimony that she does drive (Tr. 88), although there is no indication of what limits there may be on how long she drives. The ALJ found that plaintiff has been assessed with depression, but that it is not "severe" and "causes no restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration." (Tr. 33). These findings address many of the factors which are mentioned in the Trimiar decision.

Given the ALJ's consideration of these factors, as well as the number of jobs existing nationally (119,000) for persons with plaintiff's RFC, the court finds that substantial evidence supports

the ALJ's finding that there are a "significant" number of jobs nationally that plaintiff can perform.

There are somewhat older Tenth Circuit cases which appear to contradict this holding. We believe these cases are distinguishable. In Rhodes v. Barnhart, 117 Fed.Appx. 622 (10th Cir. 2004), the Tenth Circuit remanded a "significant numbers" issue where there was vocational expert testimony of 14,000 jobs nationally and the ALJ made oral comments during the administrative hearing suggesting that jobs did not exist in significant numbers. In Allen, 357 F.3d at 1143-44, the ALJ made errors by ignoring physical and mental restrictions which limited the number of jobs which the claimant could perform. In Chavez v. Barnhart, 126 Fed.Appx. 434, 436 (10th Cir. 2005), the ALJ improperly relied upon two types of jobs existing in the national or regional economy when those jobs, as described by the vocational expert, conflicted with the definitions in the Dictionary of Occupational Titles. In the instant case, we believe the ALJ properly considered the jobs which the vocational expert testified plaintiff could perform in the national economy.

Finally, plaintiff contends that the vocational expert's testimony in this case is unreliable because it is based upon the outdated Dictionary of Occupational Titles (DOT). Plaintiff argues that the DOT was last published in 1991 and is not reliable for deciding the job requirements for a position like surveillance

8

systems monitor. Plaintiff cites to Cunningham v. Astrue, 360 Fed.Appx. 606, 616 (6th Cir. 2010) where the court concluded that dependence upon DOT listings alone for the job of surveillance system monitor does not warrant a presumption of validity. The court noted that a more current source of job requirements exists which is called the Occupational Information Network or "O*NET." However, this source apparently does not have a listing for surveillance system monitor. Ultimately, the Sixth Circuit did not determine that the DOT listings were unreliable, but remanded the case for further consideration of the issue.

The court is mindful that our standard of review is whether there is substantial evidence to support the ALJ's decision. Plaintiff makes no specific argument as to why the DOT listings are unreliable in the circumstances of this case other than sheer age. The vocational expert, whose qualifications were conceded, testified that her findings were consistent with the DOT. Although the DOT was last published in 1991, the court is unwilling to find that substantial evidence is lacking in this case merely because the vocational expert's testimony is consistent with DOT listings of that age. Social Security regulations currently state that the agency "will take administrative notice of reliable job information available from various governmental and other publications [including] - - (1) Dictionary of Occupational Titles. . . ." 20 C.F.R. § 404.1566 (d)(1). Agency policy further requires, pursuant

9

to SSR 00-4P, that an explanation be given and its reasonableness assessed for any conflict between occupational evidence supplied by a vocational expert and information in the DOT. In 2005, the Tenth Circuit reversed a denial of benefits on the grounds that the ALJ's findings were not consistent with the job requirements of a surveillance-system monitor as set forth in the DOT. <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1174-76 (10th Cir. 2005). In 2009, the Tenth Circuit discussed DOT job descriptions for various occupations to determine whether they were consistent with the testimony of a vocational expert. <u>Krueger v. Astrue</u>, 337 Fed.Appx. 758, 761-62 (10th Cir. 2009). The age of the DOT listings, while obvious to the parties and the courts, was not raised as an issue in either case. It apparently was not considered a matter of concern. In conclusion, the court finds that the ALJ's decision at step five of the sequential analysis is supported by substantial evidence in the form of the vocational expert's opinion, which is consistent with the DOT.

IV. CONCLUSION

For the above-stated reasons, defendant's decision to deny plaintiff's applications for benefits shall be affirmed.

**IT IS SO ORDERED.**

Dated this 31st day of August, 2010 at Topeka, Kansas.

         s/Richard D. Rogers
         United States District Judge